**William E. HANES, Appellant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.**

**No. 9275.**

United States Court of Appeals Fourth Circuit.

Argued April 21, 1964.

Decided Sept. 23, 1964.

Frank C. Maloney, III, Richmond, Va. (Allen, Allen, Allen & Allen, Richmond, Va., on brief), for appellant.

Peter B. Edelman, Attorney, Department of Justice (John W. Douglas, Asst. Atty. Gen., and Sherman L. Cohn, Attorney, Department of Justice, and C. Vernon Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.

BOREMAN, Circuit Judge.

William E. Hanes brought this action in the District Court under section 205 (g) of the Social Security Act (42 U.S. C.A. § 405(g)) to obtain judicial review of the decision of the Secretary of Health, Education and Welfare (hereinafter Secretary) denying his application for the establishment of a period of disability under section 216(i) (1) of the Act (42 U.S.C.A. § 416(i) (1)) and for disability benefits for himself and his children under section 223 (42 U.S.C.A. § 423). Following oral argument and the submission of briefs on behalf of both parties, the District Court granted defendant's motion for summary judgment, thus sustaining the Secretary's decision.

Actually, the ultimate issue here is the same as that before the District Court, namely, whether the Secretary's determination that claimant was not disabled within the meaning of the Act [1] is supported by substantial evidence. Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1964); Farley v. Celebrezze, 315 F.2d 704 (3 Cir. 1963); Ward v. Celebrezze, 311 F.2d 115 (5 Cir. 1962). We conclude that the court erred in granting the motion for summary judgment.

Hanes was forty-six years old at the time he filed the application. It is shown by the record that he had completed six years of school when, at age fourteen, he left school to take a job in a paper box factory where he worked for twelve years as a helper and machine operator. Thereafter he worked for a time as a truck driver for the City of Richmond, Virginia, and in 1941 was appointed to the Richmond Police Department. On May 1, 1959, he was struck from behind by an automobile as he was directing traffic in the performance of his duties as a police officer and sustained numerous injuries over various parts of his body in addition to severe internal injuries. He was hospitalized for eighty-nine days and during much of that time his condition was critical. On the day after his admission to the hospital, he underwent an operation for the resection of a gangrenous segment of the terminal ileum and end-to-end anastomosis. Following this operation his condition worsened and one week later a transverse ileocolostomy was performed and a partial dehiscence of the wound from the previous operation was repaired. Because of continued internal bleeding, a third operation was performed on May 27, 1959, and a perforated stress ulcer of the stomach was repaired. Although this operation was successful, there was further bleeding caused by multiple stress ulcers and he had edema and cardiac signs indicating some degree of heart failure. Thereafter, a severe abdominal wound infection developed which was not completely cured for several months. During the period of his hospitalization he suffered from phlebitis, jaundice, slight pneumonitis, diarrhea and other ailments. An orthopedic examination revealed a separation of the joint at his left shoulder.

Hanes was discharged from the hospital on July 27, 1959. In October 1959 he was retired from the Richmond Police Department and, at the time of the hearing before the examiner, was receiving a monthly retirement pension of approximately $243.00. Despite his continuing physical impairments, as hereinafter de-

---

1. As defined in 42 U.S.C.A. § 423(c) (2), the term "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. * * *"

scribed, he began working in January 1961 at the Ashland Memorial Building which is located two blocks from his home in Ashland, Virginia, and used by various organizations for meetings and other functions. Claimant's job with respect thereto was described by the hearing examiner as follows:

" * * * The claimant has the key to the building. He opens the building when necessary, turns on the lights, and in season, turns up the thermostat for heat. At the close of the meeting the claimant checks the room to see that it has been properly taken care of, turns off the lights, turns down the heat, and locks the building. If any repairs are necessary the claimant notifies the proper authorities. During the summer the claimant opened the doors at about eight-thirty in the morning only on Mondays and returned at about five-thirty to lock up. During the winter months there are about twelve meetings a month. He generally opens the place at about seven-thirty in the evening then goes home. He returns at about ten-thirty to turn off the lights, heat, checks the place, and locks up. * * * "

Hanes testified that his work required only one or two hours per week during the summer and eight to ten hours per week during busy weeks in the winter. He further testified that "a good part of the time" he was unable to do the work and his duties were performed by his wife or son. For this work he was receiving $125.00 per month.

Claimant first made application for a period of disability and disability benefits in November of 1959. His claim was denied in March 1960 and on October 20, 1960, he filed a second application which was prior to his employment at Ashland Memorial. This application was also administratively denied and he was granted a requested hearing before an examiner. After considering the testimony of Hanes and that of a physician who appeared on his behalf, together with a number of medical reports, the examiner concluded that "the claimant's overall ability has not been so seriously impaired * * * as to make him continuously unable to engage in any substantial gainful activity." In support of his conclusion that the claimant was able to engage in light sedentary work, the examiner cited several industrial and governmental publications listing the types of jobs held by physically handicapped persons. Review by the Appeals Council was refused and the examiner's decision became the final decision of the Secretary.

The question presented by the circumstances here distinguishes this case from any this court has heretofore considered. In view of the extensive medical evidence with respect to the degree of claimant's impairments and his own testimony as to the extent to which his activities are limited, we would have no difficulty in holding that the examiner's decision is unsupported by the record were it not for the fact that claimant is receiving $125.00 per month from Ashland Memorial. The precise question, then, to be resolved is whether the evidence of these earnings constitutes substantial evidence to support the Secretary's decision. Although the District Court expressed the view that "it is difficult to believe that he [Hanes] could engage in substantial gainful activity other than the job which he has at the War Memorial Building in Ashland or in work of a similar nature * * *," it nevertheless concluded that Hanes' earnings from that job constituted substantial evidence upon which the Secretary could base his decision. The court apparently felt that such conclusion was compelled by a departmental regulation (20 C.F.R. § 404.1534(b)) promulgated by the Secretary which provides:

"An individual's earnings from work activities averaging in excess of $100 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity in the absence of evidence to the contrary."

After noting that the regulation is neither unreasonable nor inconsistent with the statute, the lower court stated:

> "The regulation provides that earnings of $100 a month shall be deemed to demonstrate the claimant's ability to engage in substantial gainful activities 'in the absence of evidence to the contrary.' The Court finds no evidence to the contrary which removes this case from the application of the regulation. The Secretary's determination that the plaintiff was not disabled within the meaning of the Act is supported by substantial evidence. * * *"

It is claimant's position that this regulation is inconsistent with the provisions of the Social Security Act and that in the adoption and promulgation thereof the Secretary exceeded the authority granted by Congress.[2] However, we need not decide whether, if given the interpretation which the District Court apparently placed upon it, the regulation would be valid. In our view, the court below erred in ascribing controlling significance to the evidence of claimant's earnings.

We are not aware of any other cases which have construed the regulation involved here.[3] Significantly, the regulation does not say that an individual who earns in excess of one hundred dollars a month *is engaged* in substantial gainful activity; it merely creates an inference, *in the absence of evidence to the contrary,* that one who earns monthly in excess of the stated amount *is able* to engage in substantial gainful activity. As defined in another regulation of the Secretary, "[s]ubstantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1502(h). See Celebrezze v. Bolas, 316 F.2d 498, 501 (8 Cir. 1963); Roop v. Flemming, 190 F.Supp. 820, 822 (W.D.Va. 1960). And, "[s]ubstantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. * * *" 20 C.F.R. § 404.1502(h). The examiner found that claimant's duties are confined to opening and closing the Memorial Building a few times a week, turning on the lights, regulating the heat and, when repairs are necessary, notifying the proper authorities. His actual work requires no more than one or two hours a day, only one day a week during the summer and one or two hours a day three or four days a week during the winter. This finding was based wholly upon claimant's testimony and there was no other evidence in the record as to the details of the work or the nature of the employment. It seems clear that claimant is not required to perform "significant mental or physical duties." His duties, according to his testimony, are "a good part of the time" performed by his wife or thirteen year old son, and it is thus made to appear that they do not involve the exercise of significant individual responsibility.

As we have indicated, the inference created by the regulation, arising from earnings, is not conclusive and may be rebutted by "evidence to the contrary." We think the applicability and strength of the inference must vary with the circumstances in a particular case and that the totality of circumstances must be considered. Here, the extent of the claimant's impairments, the nature of

---

2. Under 42 U.S.C.A. § 405(a), the Secretary is empowered to establish rules and regulations "not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions," and to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder."

3. A few cases, however, have recognized the Secretary's use of the figure of $1200 annually as a rule of thumb to measure substantial employment. See Hicks v. Flemming, 302 F.2d 470, 473 (5 Cir.), cert. denied, 371 U.S. 868, 83 S.Ct. 132, 9 L.Ed.2d 106 (1962); Pollak v. Ribicoff, 300 F.2d 674, 678 (2 Cir. 1962); Butler v. Flemming, 288 F.2d 591, 593 (5 Cir. 1961); Flemming v. Booker, 283 F.2d 321, 324 (5 Cir. 1960).

the job from which the earnings are derived, and the extent to which the claimant is able to satisfactorily perform it are pertinent considerations. Where the evidence discloses that the claimant, in spite of severe and disabling impairments, is compelled to perform work to "keep the wolf from the door," his earnings should be given little significance. Hicks v. Flemming, 302 F.2d 470, 473 (5 Cir.), cert. denied, 371 U.S. 868, 83 S.Ct. 132, 9 L.Ed.2d 106 (1962); Flemming v. Booker, 283 F.2d 321 (5 Cir. 1960). Similarly, where the claimant is provided with a job as a charitable gesture and his earnings bear little relationship to the value of his services, it is apparent, and indeed recognized in the regulations, that his earnings are entitled to slight weight in determining his ability to engage in substantial gainful activity. 20 C.F.R. § 404.1534(a); Pruitt v. Flemming, 182 F.Supp. 159 (S.D.W. Va.1960).

■ The Secretary recognizes the relevance of these considerations but argues that here (because of his pension as a police officer) there is no wolf at claimant's door and he is engaged in competitive, nonsubsidized employment. In our view, however, "evidence to the contrary" within the meaning of the regulation is not limited to the type of evidence exemplified by the foregoing illustrations. Manifestly, the inference of ability to engage in substantial gainful activity is stronger where the job itself constitutes substantial gainful activity. Hence, consideration must be given to the work which the claimant actually performs and the nature of the employment. Medical evidence with respect to the extent of the claimant's impairments is also particularly relevant where the employment itself does not constitute substantial gainful activity.

■ It is conceded that earnings from employment, whether or not the work

itself is deemed substantial gainful activity, constitute some evidence tending to negate disability. Whether earnings in excess of $100 per month constitute substantial evidence to support the decision of the Secretary (denying disability benefits) must be determined from a considered analysis of the *whole* record. Cf. Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1964); Farley v. Celebrezze, 315 F.2d 704 (3 Cir. 1963); Hayes v. Celebrezze, 311 F. 2d 648 (5 Cir. 1963). We think the regulation has not altered this requirement.

■ Reviewing the whole record as it now stands, we conclude that the Secretary's decision is not supported by substantial evidence. Although there are some inconsistencies in the various medical reports of the several physicians who examined claimant between the time of his injuries in May of 1959 and the date of the hearing before the examiner in September 1962, there is no serious conflict. All of the doctors agreed that claimant continues to suffer from serious ailments as a result of the accident and the three abdominal operations. It is undisputed that he suffers considerably from pain in his legs, stomach and back; that he has severe diarrhea; that his left shoulder is permanently dislocated; and that he has a large ventral hernia. There seems to be no question that his ability to engage in any sort of physical activity is strictly limited. Two of the doctors who submitted medical reports expressed the opinion that claimant is totally and permanently disabled.[4] Another stated that he "apparently will not be able to return to work." A physician who examined claimant at government expense on February 10, 1960, concluded: "Although it is felt that cardiac disease is not present, this man's abdominal residua [sic] and his dislocated shoulder,

---

4. Although, as the examiner noted, opinion testimony of physicians cannot be deemed conclusive of the ultimate issue, whether claimant is disabled within the meaning of the Act, it is nevertheless relevant and

must be considered. See Thomas v. Celebrezze, 331 F.2d 541, 542–543 (4 Cir. 1964); Underwood v. Ribicoff, 298 F.2d 850 (4 Cir. 1962); Regulation of the Secretary, 20 C.F.R. § 404.1526.

together with his obesity, would make active work extremely difficult for him." Dr. Suter, one of the physicians who expressed the view that claimant is totally and permanently disabled and who had examined him most recently, in a report dated May 28, 1962, stated:

"On the basis of this patient's physical residual alone, it would appear that he is totally and permanently disabled for any type of work. Sedentary work would be impossible by virtue of the swelling of his legs, his back pain, as well as the difficulty with his diarrhea. Physical work requiring any type of moving around to labor would be equally impossible."

There was no medical evidence inconsistent with the conclusion that claimant is physically unable to engage in substantial gainful activity.

In addition to the medical evidence, the record contains only the testimony of the claimant. Before the examiner he testified that he has frequent swelling in his legs; that he suffers constantly from severe pains in his legs, stomach and back; that he has frequent headaches; that he has difficulty sleeping; and that he has constant diarrhea which requires him to visit the toilet ten to fifteen times a day. He further testified that he is able to drive about twenty miles without tiring; that he is able to shave, bathe and clothe himself; and that he is able to perform certain minor jobs around the house such as helping his wife shell beans and feed the chickens.

■■ Virtually the only evidence in the record tending to support the Secretary's conclusion is the evidence of earnings. In view of the overwhelming evidence tending to establish his disability, we do not believe this evidence can be regarded as substantial or controlling. The examiner made no specific finding as to whether claimant's job constitutes substantial gainful activity. If it does not, as the record appears to indicate, then his earnings therefrom constitute very slight evidence of his ability to engage in activity which is substantial and gainful, and there should be a further inquiry as to the extent of claimant's ability to engage in additional activities. Moreover, this determination should be coupled with a determination as to what, if any, employment opportunities consistent with his ability, education, background and experience are available to claimant. See Woodson v. Celebrezze, 325 F.2d 479 (4 Cir. 1963); Cochran v. Celebrezze, 325 F.2d 137 (4 Cir. 1963). In making the latter determination, it is important to keep in mind that the employment opportunities must be actually and not merely theoretically available.[5] Citing catalogues which list or contain capsule descriptions of thousands of jobs is unpersuasive. Thomas v. Celebrezze, 331 F.2d 541, 546 (4 Cir. 1964); Stancavage v. Celebrezze, 323 F.2d 373 (3 Cir. 1963).

■ Another consideration which significantly weakens the inference which might be drawn from the evidence of earnings is claimant's testimony as to his inability to perform even his minimal duties at Ashland Memorial. He stated: " * * * A good part of the time my wife will go down and open up or either the boy, if I'm feeling extremely bad." In the present state of the record it is impossible to evaluate the significance of this testimony. The Secretary argues that since Hanes described at length and in personal terms, his job duties at the Ashland Memorial Building, the above quoted statement, which is the only reference in the record to his inability to perform that job, is entitled to little, if any, consideration. We cannot agree. Immediately after making that statement, claimant was instructed by the examiner: *"You tell me about yourself now. When do you normally open this building up?"* (Emphasis added.) What further explanation claimant might have offered had he not been so enjoined by the examiner we do not know. Since the extent to

5. Hicks v. Flemming, 302 F.2d 470, 473 (5 Cir. 1962); Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir. 1960).

which claimant is unable to perform his job at the Ashland Memorial Building is directly relevant to the question as to whether he is able to engage in substantial gainful activity,[6] this aspect of the case should be further explored.

In sum, we conclude that there is not substantial evidence in the record, viewed as a whole, to support the Secretary's decision and that the granting of summary judgment was error. If it can be properly determined that claimant's job itself constitutes substantial gainful activity and that he is fully able to perform it, a different conclusion would be justified. Accordingly, the case is remanded to the District Court with directions to remand it to the Secretary for further proceedings consistent with the views herein expressed.

Reversed and remanded.

---

**6.** See Regulation of the Secretary, 20 C.F.R. § 404.1532.